FRANK OSBORNE, Plaintiff-Respondent, *v.* INTERNATIONAL RAILWAY COMPANY, Defendant-Appellant.

(Supreme Court, Erie Special Term, December, 1916.)

Public Service Commissions Law, § 49 — refusal to give transfer — distinction between "failure" and "refusal" to comply with statute.

> Plaintiff in an action to recover a statutory penalty must bring his cause clearly within the statute.
>
> Plaintiff boarded one of defendant's cars in the city of Buffalo and asked for and received a transfer to which he was entitled. Through inadvertence and mistake the transfer was punched ten o'clock instead of eleven o'clock, and, when plaintiff presented it to the receiving conductor on the line to which he transferred, his transfer was declined and plaintiff was compelled to pay an additional fare to complete his journey. *Held,* that in an action to recover a penalty under section 49(7) of the Public Service Commissions Law, the evidence clearly showing that defendant was endeavoring in good faith, under considerable difficulties, to comply with the statute, the conductor giving the transfers having issued between nine fifty-eight and eleven o'clock seventy-three transfers including that to the plaintiff, the fact that defendant failed so to do did not amount to a "refusal" under the circumstances, and a judgment in favor of plaintiff must be reversed, and the facts being undisputed the complaint should be dismissed.

APPEAL from a judgment of the City Court of the city of Buffalo rendered in favor of plaintiff.

Harold S. Brown, for appellant.

Harold J. Tillou, for respondent.

BISSELL, J. This action was brought to recover a penalty under section 39 of the Railroad Law, and sec-

tion 49, subdivision 7, of the Public Service Commissions Law. The defendant appeals from a judgment recovered by the plaintiff in the City Court of Buffalo.

Practically all the facts are stipulated; and none of them is disputed. The plaintiff boarded one of the defendant's cars in the city of Buffalo, and asked for, and received, a transfer, to which he was entitled. The issuing conductor punched the transfer ten o'clock. It should have been punched eleven o'clock. Consequently, when the plaintiff presented the transfer to the receiving conductor on the line to which he transferred, it was refused, and plaintiff was compelled to pay an additional fare of five cents to complete his journey.

The transfer was issued between nine fifty-eight o'clock and eleven o'clock. During that period of a little more than an hour, the conductor issued seventy-three transfers, including that of plaintiff, or an average of more than one every minute. In addition to this, of course, he had his other duties to attend to. He must necessarily have collected fares, made change, watched the ingress and egress of passengers, and given the usual signals for the start of the car at various points.

It is sufficiently clear from these facts that plaintiff's transfer was incorrectly punched through inadvertence and mistake. In fact so much was substantially conceded by plaintiff, who, when the above facts were presented by defendant, withdrew his action under section 39 of the Railroad Law, and continued it under section 49 of the Public Service Commissions Law, subdivision 7.

Section 39 of the Railroad Law, under which plaintiff withdrew his complaint, provides that a " mistake not amounting to gross negligence " shall be a defense to such an action as the one under consideration.

Plaintiff's position is simply this, that whether plaintiff's transfer was incorrectly punched through mistake or from any other cause whatsoever, plaintiff is entitled to a penalty of fifty dollars under subdivision 7 of section 49 of the Public Service Commissions Law.

It will, therefore, be necessary to examine this subdivision which reads in part as follows: " Every street surface railroad corporation entering into a contract with another such corporation as provided in section seventy-eight of the railroad law shall carry or permit any other party thereto to carry between any two points on the railroads or portions thereof embraced in such contract any passenger desiring to make one continuous trip between such points for one single fare, not higher than the fare lawfully chargeable by either of such corporations for an adult passenger. Every such corporation shall upon demand, and without extra charge, give to each passenger paying one single fare a transfer entitling such passenger to one continuous trip to any point or portion of any railroad embraced in such contract  *  *  *  substantially as a single railroad with a single rate of fare. For every *refusal* to comply with the requirements of this subdivision the corporation so refusing shall forfeit fifty dollars to the aggrieved party."

The evidence does not show that the defendant " refused " to comply with the requirements of the above subdivision. On the contrary, I think it concedly shows that the defendant was endeavoring in good faith, under considerable difficulties, to comply with the statute. The fact that it *failed* to comply with the statute does not, to my mind, amount to a *refusal* to comply, at least under the circumstances here disclosed.

To refuse connotes something affirmative. It is to deny, to decline, to reject; not merely negatively to

fail. At any rate, if the legislature had desired to adopt the construction which plaintiff urges, I see no reason why it did not use the word " failure " instead of the word " refusal." If it meant " failure " it could easily have said " failure." That would have covered every possible case, and left no room for dispute. The only fair inference that I can draw from the use by the legislature of the word " refusal " is that that word exactly expressed its meaning, and I see no justification for interpreting the word in the light of any but its normal and commonly accepted meaning.

To adopt plaintiff's interpretation of the statute would be to take an unjust and unnecessarily harsh view of the law. It would involve infliction of a heavy penalty on the defendant for an unfortunate and probably, under the circumstances, unavoidable accident and mistake committed at a time when it must be conceded defendant was endeavoring, in good faith, to comply with the law. On the other hand, it allows the plaintiff to take an unconscionable advantage of the defendant's honest error, and deprive it of the sum of fifty dollars in return for his own insignificant loss of five cents. This is not good morals, and I do not believe it is good law. The statute was designed to punish transportation companies who unlawfully, deliberately or unreasonably refuse to carry for a lawful fare. There is evidently no disposition in this case on the part of this defendant to refuse to carry for a lawful fare.

A statute awarding a penalty should be strictly construed, and a plaintiff in such a case must bring his cause clearly within the statute. In *Chase* v. *New York Central R. R. Co.*, 26 N. Y. 523–525, the following rule is laid down: " The great, leading rule for the

construction of statutes is, to ascertain fairly the intention of the legislature in enacting the statute. In statutes giving a penalty, if there be reasonable doubt of the case, made upon the trial or in the pleadings, coming within the statute, the party of whom the penalty is claimed is to have the benefit of such doubt." See also *Goodspeed* v. *Ithaca St. R. R. Co.,* 184 N. Y. 351.

I do not think it may fairly be said that the plaintiff's proof shows that the defendant " refused " to comply with the statute.

It follows that the judgment of the plaintiff must be reversed. There is no dispute about the facts, and no good would come of a new trial. The complaint is, therefore, dismissed.

Judgment reversed.