BERNES O. NORTON, ADM'R *vs.* HENRY SMITH.

Waldo.      Opinion February 13, 1931.

*Clyde R. Chapman,*
*McLean, Fogg, and Southard,* for plaintiff.
*Buzzell & Thornton,*
*Frederick W. Hinckley,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRING-
TON, THAXTER, JJ.

STURGIS, J.   Action of assumpsit by the plaintiff as adminis-
trator c. t. a. of the estate of Alma E. Bradbury, late of Belfast,
to recover a balance claimed to be due on a note given to the testa-
trix by the defendant. The plaintiff relies only on the last two
counts of his declaration: (4) on a promissory note dated June 1,

1925, for thirteen thousand five hundred dollars payable on demand with interest, and (5) on the same note alleged to have been lost.

The defendant pleads the general issue with a brief statement that on June 1, 1925, for valuable consideration, he gave the testatrix a note for fifteen thousand dollars and subsequently, fifteen hundred dollars having been paid thereon, the testatrix discharged the note by intentionally destroying it.

The case is reported to the Law Court for determination of the legal rights of the parties upon so much of the evidence as is legally admissible. On report, as a general rule, nothing to the contrary appearing, all technical questions of pleading are deemed to be waived and the single question before the court is whether, upon all the evidence giving it the effect a jury ought to give it, the plaintiff is entitled to judgment. *Power Co.* v. *Foundation Co.*, 129 Me., 81; *Callinan* v. *Tetrault*, 123 Me., 302; *Pillsbury* v. *Brown*, 82 Me., 450, 455. This rule applies to the case at bar, except as the stipulation of the parties obviates the necessity of certain findings of fact, and limits the issues.

The plaintiff, through his counsel, admitted that, under his pleadings, he relied solely on a note for fifteen thousand dollars given by the defendant to the testatrix during her lifetime, on which fifteen hundred dollars had been paid. He introduced the following stipulation and rested:

"It is stipulated and agreed that the plaintiff relies on the last two counts in the declaration and that the note declared on in said counts is due and payable in the sum of $13,500. ($1,500 having been paid thereon), unless in the lifetime of the said Alma E. Bradbury she forgave the said defendant said note and discharged the same by intentionally destroying it, and that the only issue is whether or not the said Alma E. Bradbury did, during her lifetime, forgive said note or discharge said note by intentionally destroying the same."

It is well settled law that, if the holder of a promissory note intentionally destroys it, he thereby forgives and discharges the

debt evidenced by it and can not maintain an action based upon the instrument. In a suit upon a note the burden of proving its destruction and a discharge of the debt is upon the maker. *Dist. of Columbia* v. *Cornell*, 130 U. S., 655, 658; *Sullivan* v. *Shea*, 32 Cal. App., 369; *Darland* v. *Taylor*, 52 Iowa, 503; *McDonald* v. *Loomis*, 233 Mich., 174; *Vanauken* v. *Hornbeck*, 14 N. J. L., 178; *Gardner* v. *Gardner*, 22 Wend. (N. Y.), 525; *Henson* v. *Henson*, 151 Tenn., 137; Negotiable Instruments Act, R. S., Chap. 164, Sec. 119 (3); 8 C. J., 614; 3 R. C. L., 1270; 37 A. L. R., 1148.

The defendant called Mrs. Rosanna B. Odiorne of Augusta to the stand. This witness, unrelated to any of the parties and apparently disinterested, testified that, following an intimate acquaintance of eight or ten years, Mrs. Bradbury spent the month of March, 1926, with her in St. Petersburg, Florida, and, while there, told Mrs. Odiorne that she had loaned the defendant money to go into business, taken his note for it and later destroyed it. Omitting colloquy and objection, the material testimony of this witness is:

Q. And while she was visiting at your home did she have any discussion with you in regard to a note given by Henry Smith?

A. Yes, she did.

Q. Will you state the conversation that she had in regard to the matter?

A. Mrs. Bradbury asked me first what I would think —

Witness continuing — She asked me what I would think of her having Henry and Ellen Smith come into her home to live with her. They had planned it.

Q. All right, Mrs. Odiorne?

A. Shall I go on?

Q. Yes.

A. For a moment I did not answer Mrs. Bradbury because I thought it rather an unusual thing to do and I thought that anybody —

Q. I wouldn't go into that. Just what she said to you.

A. You mean from there on?

Q. Yes. What she said to you.

A. She had planned — Shall I say it?

Q. Yes.

A. She had planned about the future of the house, the running of the house and that sort of thing, and how easy she hoped to make it for Mr. and Mrs. Smith; that when Mr. Smith went into business she had loaned him some money and she had his note for it. She said: "I could not have that hanging over those children; so I said to Henry Smith, 'Child, I never will need that and we will destroy it.' We did destroy it and that ended it."

Q. (The Court) Those last words, "That ended it," were those words of Mrs. Bradbury or your words now?

A. Those were Mrs. Bradbury's words.

Q. (The Court) She used the words "That ended it"?

A. "We destroyed it and that ended it."

Q. In that discussion in regard to destroying the note, did she express to you her feeling in regard to Mr. and Mrs. Smith, giving that as a reason why she was doing it, or anything like that?

A. She certainly did.

Q. What did she say in regard to Mr. and Mrs. Smith, either or both of them, in connection with her talk about destroying the note?

A. She said, "I love Ellen Smith as a sister. Henry Smith is the salt of the earth."

An examination of the testimony of other witnesses, discloses that, when on June 8, 1925, the defendant purchased a half interest in a local garage business conducted by the firm of Gordon & Rogers, he borrowed $15,000 from Mrs. Bradbury. She raised the money by selling Central Farm Loan bonds through the Merrill Trust Co. of Bangor, Maine, directing the proceeds to be sent to the defendant in the form of a check for $13,500 payable to M. L. Gordon and $1,500 in currency. The check was used to purchase a half interest in the garage business. The currency was deposited in the defendant's bank account.

Although the note here sued upon has never appeared among the assets of Mrs. Bradbury's estate, the defendant admits giving the testatrix a note for $15,000 at the time she loaned him the money to purchase an interest in the garage business. His claim that payments amounting to $1,500 were made to the testatrix and the note reduced accordingly is not controverted, but admitted by the stipulation in the case. The plaintiff not waiving the bar of the statute, the defendant gave no further admissible testimony directly supporting his evidence. R. S., Chap. 96, Sec. 119.

The defendant never purchased or engaged in any business on his own account other than the garage business acquired from M. L. Gordon. From boyhood he had been employed in clerical work, formerly at Bangor and in later years at Belfast. He was treasurer of the Waldo Trust Co. when he went into the garage business. This was his only business venture.

Counsel for the plaintiff argues, however, that earlier acts and declarations of the defendant raise a question as to the destruction of a note by the testatrix and, assuming such destruction, whether the note sued upon and admittedly given by the defendant was the one destroyed.

On the first point, he introduced evidence showing that the defendant was special administrator of Mrs. Bradbury's estate and, although admonished by the Judge of Probate when he was appointed not to open the safety deposit box of the deceased except in the presence of a representative of the residuary legatee under the will, he went to the box accompanied only by his personal attorney, who also represented the Surety Company furnishing his official bond. There is no proof, however, that the note in suit was then in the box or that the defendant then or afterwards had it in his possession. The incident is noted because counsel argued it. It has no probative value.

As casting doubt upon the identity of the note destroyed, the plaintiff calls attention to inconsistencies and uncertainties in the testimony given by the defendant in a series of examinations, before the Probate Court and the Supreme Court, wherein his transactions with the testatrix and his special administration of her estate were in issue. The statements claimed to have been made by

the defendant at these hearings were included in the report as admissions against interest.

Witnesses say, that on his first examination before the Probate Court, the defendant stated "he had not borrowed any money of" Mrs. Bradbury and "was not indebted to" her. The defendant insists, however, that, having in mind the destruction and discharge of his note for $15,000 admittedly given Mrs. Bradbury, when he was asked if he owed her estate any money, he said, "I do not." He denies saying he had not borrowed any money from her. No stenographic report was made of this examination and the sharp conflict in the testimony must be weighed by the usual rules.

Examined at later hearings as to the note here in suit, the transcript of the defendant's testimony shows that he repeatedly referred to the note as one for $13,500 and in one answer spoke of it as a note for $11,000. The defendant's explanation of this is that he, at all times, intended to refer to the note of $15,000 in controversy and spoke of it as for $13,500 because that was its unpaid balance. He denies intentional reference to a note for $11,000 and charges typographical error.

Carefully analyzing these earlier statements by the defendant, we are of opinion that they do not show the existence of more than one note. The inclusion of brief excerpts, only, from the defendant's former testimony furnish an incomplete and doubtful basis for sound judgment as to the true force and effect to be given his utterances. But his examination in each case, so far as appears, was directed to the existence of a single note and that given for the money loaned for his purchase of the Gordon interest in the garage business. His answers seemed to be responsive only to this inquiry despite his misstatements of the amount of the note. We can not base our conclusions on conjectures to the contrary.

If we exclude from consideration all testimony given by the defendant bearing on the issues involved, the facts, proven otherwise or admitted, leave only the inference that the note in suit was canceled by its intentional destruction by the testatrix. The only business that the defendant ever went into was the garage business. Mrs. Bradbury undoubtedly loaned him $15,000 for that purpose. Admittedly he gave her a note for that amount therefor. The exist-

ence of the note since her death is not shown. It clearly appears that she said that she loaned him money to go into business, had his note for it, destroyed it and ended it. The chain of circumstances connecting the note in suit with that destroyed is unbroken.

*Judgment for defendant.*